UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES BISH,
                Plaintiff,

                              **Hon. Hugh B. Scott**

        v.

                              **17CV340V**

                                **Report**
NANCY A. BERRYHILL[1], Acting     **and**
Commissioner of Social Security,    **Recommendation**

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 14 (plaintiff), 15 (defendant)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("James Bish" or "plaintiff") filed an application for disability insurance benefits on August 23, 2013. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded,

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security at the commencement of this action, but no successor has been named, see Joe Davidson, "Social Security Is now Headless because of Trump's Inaction," Wash. Post, Mar. 12, 2018. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action; no further action is required, 42 U.S.C. § 405(g).

in a written decision dated April 21, 2016, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on February 23, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on April 21, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 14, 15). The motions were deemed submitted on March 19, 2018 (Docket No. 12).

## FACTUAL BACKGROUND[2]

Plaintiff was born on October 19, 1969, and has what the ALJ deemed to be a limited education (R. 26). Plaintiff testified that he has an eleventh grade education (R. 229) not competing high school due to a car accident (R. 68; Docket No. 14, Pl. Memo. at tenth page[3]). He does not have past relevant work (R. 26).

Plaintiff's impairments are degenerative disc disease, status-post right index finger amputation, obesity, history of opioid dependence, not in remission (R. 19). Plaintiff is 71" tall and weighs 234 pounds (thus with a body mass index of 34) (R. 21). While plaintiff's obesity is severe, the ALJ concluded that the signs, symptoms, and laboratory findings of obesity were not sufficiently severe to meet a listing to be disabling (R. 21).

He also contends that he has depression (R. 19). The ALJ, however, found that plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, in maintaining concentration, persistence or pace, and noted that plaintiff had no

---

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 7.

[3]Cf. W.D.N.Y. Loc. Civ. R. 10(a)(5) requiring pagination of papers filed with the Court.

episodes of decompensation (R. 19, emphasis in original removed). The ALJ gave little weight to plaintiff's GAF score of 45, since there was no direct correlation between GAF score and severity requirements (R. 20), 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). The ALJ concluded that the depression was not a severe impairment (R. 19).

## MEDICAL AND VOCATIONAL EVIDENCE

As for plaintiff's degenerative disc disease, compared with Listing 1.04, disorders of the spine, the ALJ found that plaintiff's condition did not meet or equal this listing (R. 20-21). Despite having degenerative changes throughout plaintiff's spine, the ALJ found that plaintiff walks without assistance, has normal sensation, and "only slightly reduced motor strength" (R. 21, 412, 41, 686). Plaintiff's right index finger amputation was measured against Listing 1.02(b), major dysfunction of a joint, and the ALJ found that it involved only his right hand (and not both upper extremities as required by Listing 1.02(b)) and plaintiff still had normal stability, tone, and range of motion in the fingers of his right hand, and 51 pounds of grip strength on the right (R. 21, 523). The ALJ concluded that this listing was not met (R. 21).

Plaintiff had neck surgery in March 2014 (R. 23, 81, 418-19) and he testified that the surgery helped for the first three months after but then his feet and hands returned to being numb (R. 81).

Plaintiff alleges that the ALJ disregarded his carpel tunnel syndrome at step two of the five-step analysis (described below) (Docket No. 14, Pl. Memo. at fourteenth page; see R. 412). He cites to a nerve conduction study performed on December 11, 2014 (R. 411), in which Dr. Russell Packard found that plaintiff had bilateral carpel tunnel syndrome in the upper extremities (R. 412). Dr. Packard advised clinical correction, with initially conservative

3

treatment with a wrist splint (R. 412). He did not correlate bilateral and electrophysiologic findings with severity (R. 412). Dr. Packard also found that nerve conduction findings and EMG examination in the lower extremities were unremarkable (R. 413; see R. 24, noted by ALJ). The ALJ, however, did not discuss bilateral carpel tunnel syndrome.

As for plaintiff's chemical dependency, the ALJ found that it was "severe from an environmental, and not a mental standpoint" (R. 25). Plaintiff does not have a severe mental impairment but tested positive or admitted illicit drug use (R. 25). Despite this chemical dependency, plaintiff has generally normal mental status examinations and plaintiff denied more than minimal psychiatric concerns (R. 25). The ALJ found that there was no evidence that the drug use "exacerbates his mental or physical impairments" (R. 25).

Plaintiff had compression fracture of the lower back and upper compression fracture of the upper back and he complains of "severe major pain," numbness of the hands (R. 50-51). Prior to his accidents leading to these fractures, plaintiff engaged in heavy labor lifting heavy objects constantly (R. 50). Plaintiff is in such great pain that he had to take painkillers so he could walk (R. 52), walking up to four hours if on pain medication (R. 60). Plaintiff testified that he has shooting pain from his lower spine into his left leg and he has numbness in his hands and feet (R. 22, 80; Docket No. 14, Pl. Memo. at tenth page). He claims that he could walk for about 20 minutes but then would hurt "really bad," getting "very sharp, excruciation pains down through both buttocks cheeks down into my legs" (R. 59). Plaintiff later stopped seeing Dr. Jeffrey Lewis because he did not want further back surgery and feared that he could end up paralyzed (R. 80, 22; Docket No. 14, Pl. Memo. at tenth page). He said he could lift between 10-15 pounds without experiencing pain (R. 82, 22; Docket No. 14, Pl. Memo. at tenth page).

Plaintiff could not hold heavy weight due to his back (R. 62). Plaintiff has a history of substance abuse, using opiate pain medication and cocaine (occasionally using cocaine to kill pain) (R. 83-84; Docket No. 14, Pl. Memo. at tenth page). Plaintiff's prescription for painkillers was suspended due to plaintiff's substance abuse (R. 52-53).

Plaintiff injured his right index finger with a grinder leading to its amputation upon his request due to a lack of feeling in the digit (R. 55-56). He claims numbness in his right hand precludes him from picking up objects with that hand (R. 22, 84-85). He claims lack of feeling in that digit was due to nerve damage from his back (R. 56). He said he could not manipulate with his right hand and had to use his left hand instead (R. 56).

The ALJ found that plaintiff's residual functional capacity was that he had the ability to perform light work, except plaintiff can occasionally operate hand controls on the right; can reach overhead frequently; handling on the right is limited to no repetitive grasping, handling, or fingering with the right hand (R. 21). The ALJ also found that plaintiff can frequently feel on the right; plaintiff can never climb ladders or scaffolds; can occasionally stoop, kneel, crouch, and crawl; but he cannot repetitively rotate his cervical spine (R. 21). Plaintiff cannot handle, sell, or prepare narcotic substances or alcoholic beverages (R. 21). His time off-task need is accommodated by normal breaks (R. 21).

The ALJ found that plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical record and other evidence in the record (R. 22, 25, 26). Although plaintiff claims he can only stand or walk for 10 to 15 minutes, sit for 20 minutes, lift 10-15 pounds, and cannot pick up items with his right hand, plaintiff proposed to go fossil hunting with his daughter and missed a doctor's appointment

5

because he was busy "cleaning out places" (R. 25).   Plaintiff had generally normal physical examinations until the end of 2015 (R. 25) and had a normal gait and stance (R. 25, 555, 647). Nevertheless, the ALJ found that the record supported some limitations from plaintiff's severe impairments (R. 25).   The ALJ considered plaintiff's degenerative disc disease and the decreased range of motion in his back and slight decreased strength in lower extremities (R. 25), as well as plaintiff's reduced grip strength from the amputation of the right index finger (R. 25). The ALJ concluded that plaintiff could perform light work (with limitations noted above) (R. 25, 21).   Due to plaintiff's drug addiction, the ALJ found that plaintiff could not work with narcotics or alcoholic beverages (R. 25).

The ALJ then asked the vocational expert for the expert's opinion about a hypothetical claimant with same condition, age, education, and employment background as plaintiff.   The expert opined that this claimant could work as a ticket taker, garnisher, or assembler (all light exertion work); the expert stating that the hypothetical claimant could still perform the work of an assembler despite a limitation to not perform repetitive grasping, handling, or fingering (R. 26-27, 89-90).   The ALJ then posed a second hypothetical, this time eliminating the right arm from the hypothetical claimant (R. 93).   Under that circumstance, the expert opined that this claimant would need accommodation to work (R. 93).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

  (2) whether the plaintiff suffers from a severe impairment;

  (3) whether the impairment is listed in Appendix 1 of the relevant regulations;

  (4) whether the impairment prevents the plaintiff from continuing past relevant work; and

  (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

  In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that the ALJ erred in assessing plaintiff's subjective complaints (Docket No. 14, Pl. Memo. at eleventh to thirteenth pages). He faults the ALJ for not recognizing plaintiff's carpel tunnel syndrome as a severe impairment, not mentioning the condition at all in his decision (id. at thirteenth to fifteenth pages). Defendant counters that the ALJ considered plaintiff's subjective complaint, the medical record and medical opinions, plaintiff's treatment, and his activities of daily living (Docket No. 15, Def. Memo. at 12) and plaintiff fails to establish that his ability to function was impaired by carpel tunnel syndrome (id. at 15).

I.   Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ disregarded his subjective complaints (Docket No. 14, Pl. Memo. at eleventh to thirteenth pages; see also Docket No. 16, Pl. Reply Memo. at first page). The ALJ found that plaintiff could conduct activities of daily life (R. 25) but plaintiff faults this finding because it does not consider whether plaintiff performs those activities on an ongoing and continuous basis in concluding that his subjective complaints were unsupported (Docket No. 14, Pl. Memo. at eleventh page). Defendant counters that the ALJ considered plaintiff's subjective complaints, objective medical evidence, medical opinion evidence, plaintiff's treatment, his response to treatment, and plaintiff's activities of daily living (Docket No. 15, Def. Memo. at 12; R. 21-26). Defendant argues that, under Social Security regulations, the ALJ need not accept plaintiff's subjective complaints without question (Docket No. 15, Def. Memo. at 12). Defendant noted that plaintiff's medical record showed that he had normal strength in his right hand following the amputation (id. at 13; R. 22, 310, 581). On November 5, 2014, Doctor Carol

Roth, D.O., found that plaintiff had normal strength and full range of motion in his upper extremities (R. 581).

The ALJ points to anecdotal activities (going fossil hunting, shoveling snow with his injured right hand, missing an appointment due to cleaning, R. 21, 25; Docket No. 14, Pl. Memo. at twelfth page) that he concludes shows plaintiff's abilities despite his limitations. Plaintiff points out, however, that the ALJ does not say whether plaintiff was only chaperoning his daughter during the fossil hunting event (Docket No. 14, Pl. Memo. at thirteenth page; see R. 425). He contends that there was no proof of performing these activities on a continuous basis (Docket No. 14, Pl. Memo. at eleventh and thirteenth pages), Reinard v. Astrue, No. 09CV508, 2010 WL 2758571, at *8 (W.D.N.Y. July 13, 2010) (Telesca, J.). Furthermore, these activities occurred before plaintiff's back surgery on March 31, 2014 (Docket No. 14, Pl. Memo. at thirteenth page). Plaintiff asserts that the ALJ relied on only these three instances to refute plaintiff's subjective complaints (id.).

From these anecdotes and noting from plaintiff's medical record his normal gait, coordination, and full range of motion (R. 25), the ALJ concludes that the severity of plaintiff's condition is not as plaintiff claims (R. 25) but plaintiff has some limitations (R. 25), those incorporated into the residual functional capacity. The ALJ found in plaintiff's residual functional capacity that he "can frequently feel on the right" (R. 21), disregarding plaintiff's complaints of numbness in his hand and lack of feeling in his index finger leading to its amputation and noting in the assessment that he cannot repetitively grasp (R. 21). While noting that plaintiff has a right hand grip strength of 51 pounds, his left hand is 90 pounds (R. 523, 21). The ALJ's credibility determination is within his discretion (see Docket No. 15, Def. Memo. at

14).  The ALJ here gave plaintiff's subjective complaints limited credence by incorporating limitations in his light work.

Plaintiff's motion for judgment on the pleadings (Docket No. 14) on this ground should be **denied**.

II.     Plaintiff's Carpel Tunnel Syndrome

Plaintiff next argues that his carpel tunnel syndrome was not mentioned by the ALJ at step two of the analysis (Docket No. 14, Pl. Memo. at thirteenth to fourteenth pages).  On December 11, 2014, plaintiff was assessed as having bilateral carpel tunnel syndrome by a nerve conduction study (id. at fourteenth page; R. 412).  The hypothetical posed to the vocational expert was for limits only in one arm and not two, that the bilateral carpel tunnel would indicate (Docket No. 14, Pl. Memo. at fourteenth to fifteenth pages).  In reply, plaintiff argues that the ALJ erred in disregarding the EMG indicating bilateral carpel tunnel syndrome or concluding that the syndrome was not severe because plaintiff was not being treated for it (Docket No. 16, Pl. Reply Memo. at second page), Credle v. Astrue, No. 10-CV-5624, 2012 WL 4174889, at *17 (E.D.N.Y. Sept. 19, 2012).

While step two of the five-part analysis is to determine the existence of severe impairments with that determination not being demanding at that stage (see Docket No. 14, Pl. Memo. at fourteenth page, citing Second Circuit cases), the ALJ may have erred in not noting plaintiff's bilateral carpel tunnel syndrome.  The medical report disclosing the condition, however, prescribed conservative treatment with a wrist splint (R. 412).  From that diagnosis, that condition does not appear to be severe.  Dr. Packard noted that carpel tunnel syndrome as a

result of wrist injury with common risk factors including diabetes, hypothyroidism or repetitive overuse injury (R. 412), not connecting this injury to plaintiff's back injuries.

Plaintiff's motion for judgment on the pleadings (Docket No. 14) on this ground also should be **denied**.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **affirmed**. Defendant's motion for judgment on the pleadings (Docket No. 15) should be **GRANTED** and plaintiff's motion for similar relief in his favor (Docket No. 14) should be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v.

Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                *s/Hugh B. Scott*
                                                Hon. Hugh B. Scott
                                               United States Magistrate Judge

Buffalo, New York
May 2, 2018